1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11   JEREMIAS CASTRO,                    )     NO. CV 07-182 AGR
12              Plaintiff,               )
13        v.                            )
14   MICHAEL J. ASTRUE,                 )     MEMORANDUM OPINION AND
     Commissioner of Social Security,   )     ORDER
15                                       )
16              Defendant.               )
17   _____ )

18        Jeremias Castro filed this action on January 10, 2007.  On March 20, 2007,

19   the case was transferred to Magistrate Judge Alicia G. Rosenberg.  Pursuant to

20   28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge

21   Rosenberg on March 29 and April 5, 2007.  On November 16, 2007, the parties

22   filed a Joint Stipulation ("JS") that addressed the disputed issues.  The Court has

23   taken the matter under submission without oral argument.

24        Having reviewed the entire file, the Court remands for further proceedings

25   consistent with this Opinion.

26   ///

27   ///

28   ///

**I.**

## PROCEDURAL BACKGROUND

On November 20, 2003, Castro filed applications for disability insurance and supplemental security income benefits, which the Commissioner initially denied. A.R. 14. The Administrative Law Judge ("ALJ") conducted a hearing on September 26, 2005, at which Castro (through an interpreter) and a vocational expert ("VE") testified. A.R. 625-42. On January 19, 2006, the ALJ issued a decision denying benefits. A.R. 14-20. On November 15, 2006, the Appeals Council denied Castro's request for review. A.R. 5-8.

This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

///

///

2

**III.**

**DISCUSSION**

A.     **Pertinent Legal Standards**

1.     **Definition of Disability**

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

B.     **The ALJ's Findings**

The ALJ found that Castro had the following severe impairments:  cervical and lumbar muscular strain, residuals of frozen right shoulder/impingement syndrome, bilateral carpal tunnel syndrome, and depression.  A.R. 19.  Castro had the residual functional capacity to perform "light simple routine work activities," further restricted by "mild non-exertional limitations in activities of daily living, social functioning, and is moderately limited in concentration."  A.R. 19.  Based on his residual functional capacity, the ALJ found that Castro could perform some of his past relevant work and other work.  A.R. 18, 19.

C.     **Report of Treating Psychiatrist Thomas Curtis**

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

///

3

interpretation thereof, and making findings." *Id.* at 632 (citations and internal quotation marks omitted).

Plaintiff argues that the ALJ failed to comply with the legal standard in rejecting Dr. Curtis's opinion.  JS 6.

Dr. Curtis, a psychiatrist, treated Castro in connection with a workplace injury[1] arising in 1999 and 2000; the last day Castro worked was May 19, 2000. A.R. 377.  Dr. Curtis first treated Castro on December 5, 2003.  A.R. 377.  He diagnosed him with "depressive disorder not otherwise specified with anxiety." A.R. 377.  He prescribed ProSom,[2] BuSpar,[3] and  Wellbutrin.[4]  A.R. 377.  In addition to December 5, 2003, Dr. Curtis also treated Castro on December 8, 2003; January 5, 2004; January 12, 2004; January 19, 2004; January 20, 2004; January 26, 2004; February 2, 2004; February 20, 2004; March 1, 2004; March 8, 2004; March 15, 2004; March 22, 2004; March 23, 2004; April 5, 2004; April 16, 2004; and April 20, 2004.  A.R. 354-75.

On March 17, 2004, Dr. Curtis wrote a comprehensive psychiatric evaluation report.  A.R. 380-405.  Dr. Curtis indicated that Castro had been receiving "necessary psychiatric treatment," that "[f]urther treatment services will

///

_____

[1] Castro was referred to Dr. Curtis by Castro's treating physician and by Castro's workers' compensation attorney.  A.R. 381.

[2] ProSom, the brand name of Estazolam, is normally prescribed for short-term insomnia.  Physician's Desktop Reference (available at http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Pro1359.html&contentId=ProSom&contentId=473).

[3] BuSpar, the brand name of Buspirone hydrochloride, is normally prescribed for anxiety disorders.  Physician's Desktop Reference (available at http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=BuS1059.html&contentName=BuSpar&contentId=94).

[4] Wellbutrin, the brand name of Bupropion hydrochloride, is normally prescribed for major depression.  Physician's Desktop Reference (available at http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Wel1488.html&contentName=Wellbutrin+SR&contentId=638).

4

1    be required on an as-needed basis," and that "an estimate of permanent and

2    stationary[5] residuals can now be made."

3    Dr. Curtis described the history of the workplace injury.  Castro began

4    working at Chef America in 1994.  He was a machine operator.  In 1997, he had

5    an on-the-job injury in which a heavy bowl crushed his right hand.  A.R. 384.  He

6    injured his right wrist in 1998 when lifting an 80-pound bag and pouring it into a

7    mixing bowl.  A.R. 385.  The injury was described as tendonitis and later as

8    carpal tunnel syndrome.  A.R. 385.  He was off work for about a year.  In

9    February of 2000 he had a third workplace injury in which he hurt his neck and

10   back trying to unstick a conveyor belt.  A.R. 385.  The following day he injured

11   himself a fourth time when pushing a cart; he again felt pain in his neck.  A.R.

12   385.  His supervisor "retaliated" against Castro for reporting the injuries.  A.R.

13   385-86.  The company doctor placed Castro on disability in May of 2000.  A.R.

14   386.

15   As a result of the physical injuries and stress at work, Castro started

16   experiencing "intensely disturbing emotional complications of physical pain and

17   disability including depression, anxiety, and feelings of agitation and emptiness."

18   A.R. 386.  In addition to Dr. Curtis's treatment, Castro received individual and

19   group psychotherapy.[6]  A.R. 386.  Nonetheless, Castro continued to have

20   physical pain that caused him to "remain[] depressed and anxious."  A.R. 387.

21   ///

22

23   [5] In the workers' compensation context, "'[p]ermanent and stationary
     status' is the point when the employee has reached maximal medical
24   improvement, meaning his or her condition is well stabilized, and unlikely to
     change substantially in the next year with or without medical treatment." *Zenith
25   Ins. Co. v. Workers' Comp. Appeals Bd.*, 159 Cal. App. 4th 483, 488 n.3, 71 Cal.
     Rptr. 3d 724 (2008) (citation omitted).  "Permanent and stationary status refers to
26   medical rehabilitation from an injury, not ability to work." *Id.* (citations and internal
     quotation marks omitted).

27

28   [6] As of September 26, 2005, Castro testified that he was still receiving
     therapy about once a month.

1    Based on a mental status exam, Dr. Curtis found Castro be "withdrawn,

2  depleted and tired with his psychological energy diminished by the drain of pain,

3  sleep problems, insecurity, anxiety, worry, depression and fear due to continuing

4  disability." A.R. 391.  Castro "demonstrated diminished cognitive functioning in

5  the clinical interview situation.  He was noted to be defective in recall, distracted,

6  and revealing of defects in concentration, and short-term memory." A.R. 391.

7    According to the psychological test results, Castro had severe anxiety, a

8  moderate level of hopelessness, "significant concerns about somatic functioning,"

9  and major or severe depression. A.R. 393-97.  Dr. Curtis summarized the test

10  results as "residual abnormal levels of anxiety, hopelessness and depression with

11  low energy, cognitive impairment, guilt, low self-esteem, social introversion,

12  pessimism, irritability and sadness." A.R. 397.

13    Dr. Curtis completed a "work function" rating Castro's limitations in the

14  workplace in eight categories:  (1) "comprehend and follow instructions" (slight);

15  (2) "perform simple and repetitive tasks" (slight); (3) "maintain work pace" (slight

16  to moderate); (4) "perform complex and varied tasks" (slight to moderate); (5)

17  "relate to other people" (slight to moderate); (6) "influence people" (slight); (7)

18  "generalizations, evaluations or decisions" (slight); and (8) "accept and carry out

19  responsibility" (slight). A.R. 402.  Overall, Dr. Curtis rated Castro at "slight-to-

20  moderate degree of emotional impairment at about the 40% standard level." A.R.

21  401.  Dr. Curtis recommended future psychiatric treatment for the rest of Castro's

22  life. A.R. 404-05.

23    The ALJ noted Dr. Curtis's report and the functional limitations. A.R. 16.

24  The ALJ rejected the report because it "relied primarily on the claimant's self-

25  described complaints and not on any objective mental status examination

26  findings." A.R. 16.  The ALJ also found that the report lacked "objective evidence

27  to support this functional assessment." A.R. 16.  Finally, the ALJ found that the

28  report's findings "did not appear to take into account the other factors which must

1  be considered . . ., such as the other medical reports and opinions as well as the
2  vocational factors involved."  A.R. 16.

3       The ALJ's reasons for rejecting Dr. Curtis's report are not supported by the
4  record.  First, Dr. Curtis performed a mental status examination.  A.R. 391-92.
5  The fact that the doctor concluded that Castro's subjective complaints correlated
6  well to the doctor's own findings does not mean that the doctor "relied primarily
7  on the claimant's self-described complaints," as reported by the ALJ.  A.R. 16,
8  391.  Second, the ALJ's finding that Dr. Curtis's report lacked "objective
9  evidence" is contradicted by the record.  Dr. Curtis described at great length the
10  battery of psychological tests he administered, including the various tests in Beck
11  Anxiety Inventory and the Personality Assessment Inventory, the results
12  themselves, and his interpretation of those results.  A.R. 392-97.  Third, the only
13  other medical reports considered by the ALJ involved Castro's physical injuries,
14  not his depression.  A.R. 16-17.  Thus, Dr. Curtis's report is unrebutted by any
15  other evidence considered by the ALJ.

16       Accordingly, because the ALJ failed to set forth legitimate reasons
17  supported by the record for rejecting Dr. Curtis's report, the report must be
18  credited.  *See Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006).

19       However, this case is remanded because additional testimony must be
20  elicited from the VE.  For the purpose of posing a hypothetical, the ALJ referred
21  the VE to the physical limitations set forth at pages 416-420 of the record, to
22  which he added that Castro was "limited to simple, routine tasks."  A.R. 639.  On
23  that basis, the VE found the only relevant past work Castro could perform was his
24  assembly job, but he could also perform various other jobs in the economy.  A.R.
25  639-40.  Castro's counsel asked the VE if he was familiar with the "workers' comp
26  mental health restrictions," and the VE said no.  A.R. 641.  Counsel then asked
27  what if they were "slight to moderate?"  A.R. 641.  The VE said he would need a
28  definition.  A.R. 641.  Counsel stated the following hypothetical limitation:

1
2
3
4
5
6

> If a person relating to other people, that means getting along with
> coworkers, peers, negotiating, explaining, responding, responding
> well to evaluation or criticism, and that was inhibited, let's say 25
> percent of the time.  Would that affect any of these jobs?  In other
> words, he couldn't get along with coworkers or peers 25 percent of
> the time.

7
8
9
10
11
12
13
14

A.R. 641.  The VE said that "if someone were limited with that percentage, I
would say no."  A.R. 641.  Counsel asked "[w]hat about maintaining work pace 25
percent of the time."  A.R. 641.  The VE said that "most unskilled jobs require you
to work at an industrial pace.  If you're 25 percent restricted to that, then that
would not meet industrial pace."  A.R. 641.  Thus, Castro's hearing counsel
translated Dr. Curtis's findings of slight-to-moderate in work pace and relating to
other people (A.R. 402) as a 25% restriction.  This is not an accurate reflection of
Dr. Curtis's findings.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Because the ALJ rejected Dr. Curtis's findings, he did not explain them, as
required.  *See Coria v. Heckler*, 750 F.2d 245, 248 (3d Cir. 1984) ("[T]he ALJ
should evaluate the objective medical findings set forth in the medical reports for
submission with the worker's compensation claim by the same standards that
s/he uses to evaluate medical findings in reports made in the first instance for the
Social Security claim"); *see also Lester v. Chater*, 81 F.3d 821, 832 (9th Cir.
1995) (the ALJ erred in rejecting a physician's reports because they were "clearly
obtained by the claimant's attorney for the purposes of litigation" and stating that
"[t]he purpose for which medical reports are obtained does not provide a
legitimate basis for rejecting them"); *see also Desrosiers v. Secretary of Health &
Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) ("The categories of work under
the Social Security disability scheme are measured quite differently."); *Booth v.
Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002) ("The ALJ must 'translate'
///

1    terms of art contained in such medical opinions into the corresponding Social

2    Security terminology").

3        The eight categories used by Dr. Curtis correspond to work functions in the

4    Table for Rating Psychiatric Disabilities ("Table") found in the 1997 version of the

5    Schedule for Rating Permanent Disabilities ("Schedule") (available at

6    http://www.dir.ca.gov/dwc/PDR1997.pdf).[7]  Schedule at 2-3; *see also Payan v.*

7    *Chater*, 959 F. Supp. 1197, 1204 (C.D. Cal. 1996) ("Although the ALJ noted that

8    Dr. Braverman examined the plaintiff in relation to plaintiff's workers'

9    compensation claim, the ALJ failed to properly consider Dr. Braverman's use of

10   workers' compensation terminology.").  The Table lists of eight work functions,

11   assigns a Work Function Impairment Value" ("WFIV") based on a scale from

12   minimal to severe, and places each work function in Group I (Work  Functions 1-

13   3) or Group II (Work Functions 4-8).  Schedule at 2-3.  Thus, each work function,

14   by itself, has the following WFIV (value in parentheses):  (1) "comprehend and

15   follow instructions" (10%); (2) "perform simple and repetitive tasks" (10%); (3)

16   "maintain work pace" (20%); (4) "perform complex and varied tasks" (8%); (5)

17   "relate to other people" (19%); (6) "influence people" (2%); (7) "generalizations,

18   evaluations or decisions" (3%); and (8) "accept and carry out responsibility" (2%).

19   *Id.*

20       The Schedule also prescribes a method for calculating the overall WFIV

21   which, in this instance, is the method expressed in Rating Calculation IV

22   ("impairments within both Groups I and II") because Castro was rated as impaired

23   in all work functions.  *Id.*  Calculating IV(a) provides a Group I Amount of 30% (20

24   + (.5 * (10+10)).  *Id.*  Calculating IV(b) provides a Group II Amount of 22% (19 +

25   (.2 * (8+2+3+2)).  *Id.*  To combine the results of the two groups under IV(c), the

26

27       [7]  Cal. Labor Code § 4660 "governs how the percentage of permanent
28   disability is determined."  *Zenith*, 159 Cal. App. 4th at 491 (footnote omitted).  The
     schedule in effect before January 1, 2005, was the 1997 schedule.  *Id.* at 492.

9

1 correct formula [30 + ((.45 - (30/300) * 22))] yields an unrounded result of 37.7%.

2 *Id.* Rounding that to the nearest whole rating yields the 40% standard provided

3 by Dr. Curtis.  *See id.* note 3.

4     Thus, the hypothetical asked by Castro's counsel at the hearing was

5 inaccurate.  The mental limitations that must be added to the hypothetical asked

6 of the VE on remand are as follows:

7     Assume that Castro's psychiatric limitations in the workplace are (1) he has

8 a 10% limitation in his ability to comprehend and follow instructions; (2) he has a

9 10% limitation in his ability to perform simple and repetitive tasks; (3) he has a

10 20% limitation in his ability to maintain work pace appropriate to a given work

11 load; (4) he has a 8% limitation in his ability to perform complex and varied tasks;

12 (5) he has a 20% limitation in his ability to relate to other people beyond giving

13 and receiving instructions; (6) he has a 2% limitation in his ability to influence

14 people; (7) he has a 3% limitation in his ability to make generalizations,

15 evaluations or decisions without immediate supervision; and (8) he has a 2%

16 limitation in his ability to accept and carry out responsibility for direction, control

17 and planning.  Combining these limitations, Castro has a 40% limitation in his

18 abilities in the workplace.[8]

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25

26

---

27     [8]  Because the Court is remanding so that the ALJ may pose the correct
hypothetical to the VE, the Court need not address Castro's second argument,

28 that the ALJ's hypothetical was incomplete.  JS 14.

**IV.**

**<u>ORDER</u>**

IT IS HEREBY ORDERED that the matter is remanded at Steps 4 and 5 to elicit further testimony from the vocational expert as described above.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  April 17, 2008

_____
ALICIA G. ROSENBERG
United States Magistrate Judge